# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Case No. 1:25-cv-00341-DDD-KAS

JAMES KARAS, Individually and on Behalf
of All Others Similarly Situated,

    Plaintiff,

  v.

NEWMONT CORPORATION, THOMAS R.
PALMER, NATASCHA VILJOEN, KARYN
F. OVELMEN, and PETER TOTH,

    Defendants.

## DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

# **TABLE OF CONTENTS**

**Page**

Preliminary Statement ........................................................................................................ 1

The Complaint ................................................................................................................... 2

Argument ........................................................................................................................... 4

I.   Section 10(b) Claim: Defendants' Forward-Looking Statements Are Protected By the Safe Harbor. ................................................................................................................ 4

II.  Section 10(b) Claim: Plaintiffs Fail to Plead the Element of An Actionable Misstatement. ............................................................................................................... 9

   A.  The Complaint fails to adequately plead falsity. ................................................. 9

   B.  The challenged statements were not materially misleading due to information Defendants allegedly omitted. ........................................................................... 11

   C.  Many of the alleged misstatements are inactionable opinions and corporate optimism. ............................................................................................................ 16

III. Section 10(b) Claim: Plaintiffs Fail to Plead the Element of Scienter. ................... 17

   A.  The Complaint's scienter allegations against Defendants are inadequate. ........ 18

   B.  The Former Employees' allegations do not support scienter ............................. 20

   C.  Alleged stock sales do not support scienter. ...................................................... 22

   D.  The Complaint's allegations of scienter are not cogent or compelling. ............ 23

IV. Section 20(a) Claim: Plaintiffs' Failure to Plead a Primary Violation Bars this Claim. ......... 24

Conclusion ....................................................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**                                                                                   **Page(s)**

*Adams* v. *Kinder-Morgan, Inc.*,
   340 F.3d 1083 (10th Cir. 2003) ............................................................10

*Anderson* v. *Spirit Aerosystems Holdings, Inc.*,
   827 F.3d 1229 (10th Cir. 2016) ..............................................18, 21, 22

*Basic Inc.* v. *Levinson*,
   485 U.S. 224 (1988)............................................................................12

*Bondali* v. *Yum! Brands, Inc.*,
   620 F. App'x 483 (6th Cir. 2015) ......................................................15

*Caprin* v. *Simon Transp. Serv., Inc.*,
   99 F. App'x 150 (10th Cir. 2004) ................................................11, 19

*City of Phila.* v. *Fleming Cos., Inc.*,
   264 F.3d 1245 (10th Cir. 2001) ......................................................4, 18

*Cupat* v. *Palantir Techs., Inc.*,
   2025 WL 1141534 (D. Colo. Apr. 4, 2025)..................................19, 22

*Emps.' Ret. Sys. of R.I.* v. *Williams Co., Inc.*,
   889 F.3d 1153 (10th Cir. 2018) ..........................................................12

*Ellis* v. *Spectranetics Corp.*,
   2018 WL 1583837 (D. Colo. Apr. 2, 2018)........................9, 17, 18, 19

*Grossman* v. *Novell, Inc.*,
   120 F.3d 1112 (10th Cir. 1997) ...................................................5 n.6, 10

*Hampton* v. *root9B Tech's, Inc.*,
   897 F.3d 1291 (10th Cir. 2018) ....................................10, 11, 12, 16

*Hartlieb* v. *Weiser L. Firm, P.C.*,
   861 F. App'x 714 (10th Cir. 2021) ..................................................2 n.2

*Heiner* v. *Watford*,
   2022 WL 18777077 (D. Colo. Nov. 21, 2022) ..............................16, 17

*In re Agnico-Eagle Mines Ltd. Sec. Litig.*,
   2013 WL 144041 (S.D.N.Y. Jan. 14, 2013) ..................................20, 23

*In re Barrick Gold Corp. Sec. Litig.*,
   341 F. Supp. 3d 358 (S.D.N.Y. 2018)........................................6, 9, 15, 19

*In re FX Energy, Inc. Sec. Litig.*,
  2009 WL 1812828 (D. Utah June 25, 2009)...................................................................21

*In re Gold Res. Corp. Sec. Litig.*,
  957 F. Supp. 2d 1284 (D. Colo. 2013) ............................................................. *passim*

*In re Gold Res. Corp. Sec. Litig.*,
  776 F.3d 1103 (10th Cir. 2015) ....................................................................... *passim*

*In re Level 3 Commc'ns, Inc. Sec. Litig.*,
  667 F.3d 1331 (10th Cir. 2012) ....................................................................... *passim*

*In re Level 3 Commc'ns, Inc. Sec. Litig.*,
  2010 WL 5129524 (D. Colo. Dec. 10, 2010)..........................................................24 n. 13

*In re Molycorp, Inc. Sec. Litig.*,
  2015 WL 1540523 (D. Colo. Mar. 31, 2015) ...................................................6, 9, 22

*In re Overstock Sec. Litig.*,
  2021 WL 4267920 (D. Utah Sep. 20, 2021) ...........................................................20

*In re Pretium Res. Inc. Sec. Litig.*,
  2020 WL 953609 (S.D.N.Y. Feb. 27, 2020)........................................................16, 17

*In re Sibanye Gold Ltd. Sec. Litig.*,
  2020 WL 6582326 (E.D.N.Y Nov. 10, 2020)......................................................13, 14

*In re Thornburg Mortg., Inc. Sec. Litig.*,
  695 F. Supp. 2d 1165 (D.N.M. 2010) ...............................................................20 n.12

*Ind. Pub. Ret. Sys.* v. *Pluralsight, Inc.*,
  45 F.4th 1236 (10th Cit. 2022) ......................................................................15, 22

*Institutional Invs. Grp.* v. *Avaya, Inc.*,
  564 F.3d 242 (3d Cir. 2009)................................................................................7

*Martin* v. *GNC Holdings, Inc.*,
  2017 WL 3974002 (W.D. Pa. Sept. 8, 2017).....................................................6, 7, 15

*Martin* v. *Quartermain*,
  732 F. App'x 37 (2d Cir. 2018) ......................................................................13, 16

*Matrixx Initiatives, Inc.* v. *Siracusano*,
  563 U.S. 27 (2011).........................................................................................11

*McDonald* v. *Kinder-Morgan, Inc.*,
  287 F.3d 992 (10th Cir. 2002) .............................................................................13

*Meitav Dash Provident Funds & Pension Ltd.* v. *Spirit AeroSystems Holdings, Inc.*,
    79 F.4th 1209 (10th Cir. 2023) ...............................................................................20

*Omnicare* v. *Laborers Dist. Council Constr. Indus. Pension Fund*,
    575 U.S. 175 (2015)....................................................................................12, 17

*Richfield* v. *PolarityTE, Inc.*,
    2023 WL 3010208 (D. Utah Apr. 19, 2023) ...........................................................17

*Rumbaugh* v. *USANA Health Scis., Inc.*,
    2018 WL 5044240 (D. Utah Oct. 17, 2018) ............................................................22

*Saee* v. *Enserveco et al.*,
    No. 1:22-cv-01267-DDD-STV (D. Colo. Mar. 4, 2024) .............................................20

*Shafer* v. *Lightning eMotors, Inc.*,
    2024 WL 1509166 (D. Colo. Mar. 26, 2024) .....................................................14 n.9

*Smallen* v. *Western Union, Co.*,
    950 F.3d 1297 (10th Cir. 2020) ...........................................................19, 20, 23

*Sorkin, LLC* v. *Fischer Imaging Corp.*,
    2005 WL 1459735 (D. Colo. June 21, 2005)...........................................................21

*Tellabs, Inc.* v. *Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007)..............................................................................4, 17, 23

*Wolfe* v. *Aspenbio Pharma, Inc.*,
    587 F. App'x 493 (10th Cir. 2014) ......................................................................20

**Rules and Statutes**

Rule 10b-5, 17 C.F.R. § 240.10b-5 ...............................................................................4

Section 20(a), 15 U.S.C. § 78t(a) ...............................................................................24

15 U.S.C. § 78u–4(b) ...................................................................................4, 10, 17

15 U.S.C. § 78u-5(c) .............................................................................................4, 5

Fed. R. Civ. P. 9(b) ...........................................................................................5 n.5

Fed. R. Civ. P. 12(b)(6)............................................................................................2

Private Securities Litigation Reform Act of 1995 ................................................ *passim*

## PRELIMINARY STATEMENT

Newmont Corporation mines gold, an endeavor that, throughout human history, has been synonymous with uncertain prospects and changeable fortune. Modern mining is highly technical, time- and capital-intensive, and dangerous. The complexity of Newmont's enterprise is compounded by its global scale, which exposes it to variable site conditions, shifting macroeconomic forces, and challenging environments. At the time of the disclosures at the heart of the Complaint, this included 17 managed mining operations and other assets across 13 countries.

Ignoring this, Plaintiffs seek to hold Newmont and its most senior executives liable for securities fraud because they could not perfectly predict its financial results. The Private Securities Litigation Reform Act ("PSLRA") precludes such a result. The crux of the Amended Complaint ("Complaint") rests on Newmont's forward-looking production and cost guidance issued in February 2024, just a few months after Newmont had conducted a $17 billion acquisition of Newcrest Mining Limited ("Newcrest"). Plaintiffs do not claim this guidance was false when issued, only that Defendants knew by the time of Newmont's July 2024 earnings announcement that these good-faith projections were incorrect. Plaintiffs' basis: three months later, in connection with the October 2024 earnings announcement, Newmont updated its guidance in part in light of difficulties at two of the newly acquired mines, Lihir and Brucejack. In other words, for motives unclear, Defendants allegedly committed a single quarter of securities fraud.

There are numerous reasons to dismiss the Complaint. Most fundamental, the suit contravenes core provisions of the PSLRA. Through the PSLRA, Congress encouraged companies to disclose future plans, objectives, and goals by insulating forward-looking statements from liability via a statutory safe harbor. Those are precisely the types of statements at issue (Point I), and Plaintiffs fail to allege any other actionable statement (Point II). Congress also aimed to prevent specious securities suits by requiring that pleadings support a strong inference that

defendants acted with fraudulent intent. The allegations here, based on purported opinions of former employees with degrees of separation from the senior executives who are defendants, do not come close to showing that Newmont and those executives intended to deceive the market for a single quarter, as opposed to it simply taking three months longer than Plaintiffs would prefer for information about two of Newmont's newly acquired mines to crystalize into revisions to its full-company projections (Point III). As there is no underlying claim, the Section 20(a) control-liability count must also be dismissed (Point IV). For the reasons below, Defendants respectfully move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## THE COMPLAINT

The Complaint challenges Newmont's public disclosures concerning its anticipated production and costs for 2024 and 2025. ¶4.[1] Relevant here, Newmont forecasted that its Tier 1 Portfolio would produce 5.6Moz of gold in 2024 at an All In Sustaining Cost ("AISC") of $1,300/oz and produce around 6.2Moz in 2025 at around $1,250/oz. ¶¶99, 105; Ex. 1 (2023 Earnings Presentation) at 19.[2] Newmont also predicted synergies from its 2023 acquisition of Newcrest of $500 million by 2025. ¶98. The projections were first made in February 2024 and discussed again on the earnings call in April 2024. ¶¶98-99, 105; Ex. 1 at 19; Ex. 2 (1Q2024 Earnings Call) at 4-5. Plaintiffs do not challenge these disclosures. Instead they claim that, by July 2024, Defendants knew or recklessly disregarded issues at Lihir and Brucejack — two mines acquired in that $17 billion acquisition — "would adversely impact Newmont's production, margins, and financial results in 3Q2024 and beyond." ¶4.

---

[1] Complaint citations are indicated by "¶" followed by a paragraph number.
[2] The Court may consider the motion's exhibits as they are indisputably authentic documents referenced in the Complaint and are central to Plaintiffs' claims. *Hartlieb* v. *Weiser L. Firm, P.C.*, 861 F. App'x 714, 719 (10th Cir. 2021). As such, Defendants are proceeding by motion to dismiss.

Plaintiffs allege three sets of statements amounted to securities fraud: (1) statements made on July 24 and 25, 2024 in connection with Newmont's 2Q2024 earnings announcement, including discussing production, cost, and synergy expectations (¶¶110-30); (2) statements at the Denver Gold Forum in September 2024 about "stepping back and looking at the full portfolio of assets" and the "opportunity" it provided (¶¶131-32); and (3) two graphics about Newmont's production and cost outlook purportedly shared with investors at BNP Paribas meetings in London and Paris around October 3, 2024 (¶¶136-41). The Complaint alleges, with slight variation, that, at the time the statements were made, "Defendants failed to disclose they knew or recklessly disregarded that material adverse circumstances at Lihir and Brucejack would materially, adversely impact Newmont's production and increase its AISC, contracting margins materially." ¶115; *see also* ¶¶110-41 (similar allegations following each alleged misstatement). For the Court's convenience, the attached Appendix lists each statement the Complaint alleges to be false or misleading; references herein to a "statement" number refer to the Appendix numbering.

Plaintiffs allege the truth was revealed on October 23 and 24, 2024 when "Defendants announced material production and cost issues at two of Newmont's Teir [sic] 1 assets, Lihir and Brucejack, that led the company to downgrade production estimates and increase cost estimates materially." ¶189. They claim that because of this revelation, Newmont's stock dropped and they suffered losses. ¶¶188-89. Numerous other adverse disclosures occurred that day.[3]

Plaintiffs also disregard robust cautionary language about the acquisition, these specific mines, and the challenged projections that are replete in Newmont's public disclosures, including those cited in the Complaint. *See, e.g.*, ¶129; Ex. 4 (May 14, 2023 8-K) (excerpted) at Ex. 99.1, 9-

---

[3] In addition to issues at Lihir and Brucejack, Newmont discussed challenges at other mines, such as power issues at Cadia and tragic deaths at Cerro Negro that prompted safety improvements, and inflation. ¶¶146-57; Ex. 3 (3Q2024 Earnings Call) at 11-12.

12; Ex. 5 (May 15, 2023 Transcript) at 6-7; Ex. 6 (2023 10-K) at 12-47; Ex. 7 (2023 Earnings Call) at 4-6, 14-17; Ex. 2 at 4, 6, 12, 16-17; Ex. 8 (2Q2024 Earnings Call) at 4, 6, 15, 17; Ex. 9 (2Q2024 Earnings Release) at 29; Ex. 10 (2Q2024 10-Q) at 72-74.

## ARGUMENT

To state a claim under Section 10(b) and Rule 10b-5, Plaintiffs must adequately allege: "(1) a misleading statement or omission of a material fact; (2) made in connection with the purchase or sale of securities; (3) with intent to defraud or recklessness; (4) reliance; and (5) damages." *City of Phila.* v. *Fleming Cos., Inc.*, 264 F.3d 1245, 1257-58 (10th Cir. 2001).[4]

In addition, Congress enacted the PSLRA to serve as "a check against abusive [securities] litigation by private parties." *Tellabs, Inc.* v. *Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007). To prevent spurious lawsuits — like this case — from "impos[ing] substantial costs on companies and individuals whose conduct conforms to the law," the PSLRA imposes "[e]xacting pleading requirements" that apply to the falsity and scienter elements of a 10b-5 claim, and creates a "safe harbor" immunizing forward-looking statements. *Id.* at 313, 321 (referring to 15 U.S.C. §§ 78u-4(b), 78u-5(c)); *see also In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1109 (10th Cir. 2015); *In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d 1331, 1333 (10th Cir. 2012).[5] The Complaint fails to meet these exacting standards.

## I.    Section 10(b) Claim: Defendants' Forward-Looking Statements Are Protected By the Safe Harbor.

The PSLRA safe harbor shields: "(1) forward-looking statements accompanied by 'meaningful cautionary statements,' (2) forward-looking statements that are 'immaterial,' and (3) forward-looking statements made without 'actual knowledge' of its falsity." *In re Gold Res. Corp.*

---

[4] Unless otherwise noted, emphasis is added and internal citations and quotations are omitted.

[5] The stringent particularity requirements of Federal Rule of Civil Procedure 9(b) also apply.

*Sec. Litig.*, 957 F. Supp. 2d 1284, 1293 (D. Colo. 2013), *aff'd* 776 F.3d 1103 (discussing 15 U.S.C.

§78u-5(c)). These categories are read disjunctively. *Id.*[6]

Defendants' challenged statements are exactly the sorts of market disclosures the safe

harbor was designed to foster and protect.

*First*, nearly all the alleged misstatements were forward-looking. This includes:

- Statements about Newmont's plans and future prospects in its 2Q2024 earnings release and earnings call. Statements 1(b), 3-5, 7-9. (Exs. 9 at 2; 8 at 4-8, 12-13.)

- Statements in the risk factors section of Newmont's 10-K, incorporated by reference into its 2Q2024 10-Q, related to the risks of "[i]ncreased operating and capital costs" on Newmont's future profitability. Statements 10(a)-(b). (Exs. 6 at 19; 10 at 77.)

- Statements made by Defendant Viljoen, the company's COO, at the Denver Gold Forum regarding the opportunity presented by the Newcrest acquisition. Statement 11. (Ex. 11 (2024 Webcast) at 4-5.)

- Charts related to Newmont's production and cost outlook allegedly disseminated by Defendants Palmer and Ovelmen, the company's CEO and CFO, at meetings hosted by BNP Paribas. Statements 12 and 13. (Ex. 12 (BNP Report) at 2-3.)

Only three alleged misstatements — concerning accurate recitations of historical facts — are not

encompassed in the above. *See infra* 13, discussing statements 1(a), 2, and 6. (Exs. 9 at 2; 8 at 6.)

The substance of these challenged statements is clearly future-oriented, as is Plaintiffs'

theory of the case: "Defendants' liability stems from the fact that they provided investors with

revenue *projections* while at the same time failing to maintain adequate forecasting processes."

¶191;[7] *see also* ¶4 (stating, in the Complaint's description of the "Nature of the Case," "Defendants

---

[6] Such statements are also protected by the substantially similar bespeaks caution doctrine. *Grossman* v. *Novell, Inc.*, 120 F.3d 1112, 1122 (10th Cir. 1997).

[7] As to this assertion, Plaintiffs have not pleaded any alleged false statements discussing the forecasting process, explained why this would be an actionable basis for a claim under Section 10(b), or pleaded any particularized facts as to the alleged inadequacy of this process that would render any of the alleged misstatements actionable, particularly since "[w]hether Defendants issued their February 2024 guidance in good faith is not at issue" (¶4).

knew or recklessly disregarded that materially adverse operational, production, and cost issues at Lihir…and operational and grade issues at Brucejack…*would* adversely impact Newmont's production, margins, and financial results *in 3Q2024 and beyond*").

Thus, the litany of alleged misstatements Plaintiffs challenge from Newmont's 2Q2024 earnings announcement are related to the company's prospective performance and plans. Statements 1(b), 3-5, 7-9. The allegedly misleading risk factors were also oriented toward the future, describing what might occur because of risks Newmont faces related to operating and capital costs. Statements 10(a)-(b) (*e.g.*, "[i]ncreased operating and capital costs *could* affect our profitability"). Viljoen's statement at the Denver Gold Forum (statement 11) was forward-looking as well, as the "opportunity" it describes is future-oriented. So too were the charts (statements 12 and 13) relating to Newmont's production and cost outlook allegedly shown at the BNP Paribas meetings.

Moreover, Newmont *told* investors statements like these were forward-looking. They contain terminology that Newmont said signaled a forward-looking statement, like "expect(s)," "anticipate(s)," "may," and "similar expressions." Ex. 10 at 72 (incorporated by reference into earnings call). And they include statements Newmont identified as forward-looking, such as addressing "future mineral production," "future production costs," and "expectations from the integration of Newcrest." *Id.*; s*ee also* Ex. 9 at 29 (similar disclaimers). Thus, these statements qualify for safe-harbor protection. *See, e.g.*, *In re Molycorp, Inc. Sec. Litig.*, 2015 WL 1540523, at *26 (D. Colo. Mar. 31, 2015) (similar statements by mining company); *In re Barrick Gold Corp. Sec. Litig.*, 341 F. Supp. 3d 358, 375 (S.D.N.Y. 2018) ("words such as 'expect' identify forward-looking statements" by mining company); *Gold Res.*, 957 F. Supp. 2d at 1298; *see also* 15 U.S.C. § 78u-5(i)(1)(A)-(D) (defining forward-looking statements); *Martin* v. *GNC Holdings, Inc.*, 2017

WL 3974002, at *9 n.13 (W.D. Pa. Sept. 8, 2017), *aff'd,* 757 F. App'x 151 (3rd Cir. 2018) ("[C]hallenged risk disclosure is forward-looking … and by its very nature is a meaningful cautionary statement.").

In two instances, the Complaint attempts to end-run the safe harbor by labeling forward-looking statements as "then-present" ones. *See* ¶115 (statement 3); ¶128 (statement 9). Not true. Statement 3, about being "on track" with guidance, is in line with statements courts find are forward-looking. *See, e.g.*, *Gold Res.*, 957 F. Supp. 2d at 1296 (noting "we are *on track* to meet our goals for the year" found forward-looking in *Institutional Investors Group* v. *Avaya, Inc.*, 564 F.3d 242 (3d Cir. 2009)). Statement 9 discusses cost projections "across the year" being "pretty stable" because costs "in the first half" were expected to be "flowing through the second half;" it too describes a projection of future results. ¶127. And because Plaintiffs do not allege Newmont inaccurately reported its 2Q2024 results, all that could remain of these and the other alleged misstatements are forward-looking portions.

*Second*, Newmont accompanied these statements with meaningful cautionary language. Newmont's 2Q2024 10-Q explained that forward-looking statements were "subject to risks, uncertainties and other factors, which could cause actual results to differ materially from future results expressed, projected or implied by those forward-looking statements." Ex. 10 at 73; *see also* Ex. 8 at 4 (identifying available written cautionary language in Newmont's SEC filings). Newmont also provided numerous, on-point examples of factors that could affect its results. These included "the cost of operations;" "operating performance of equipment, processes and facilities;" and "geotechnical challenges," Ex. 10 at 73 — precisely the issues at the core of Plaintiffs' claims regarding Lihir and Brucejack. *See, e.g.*, ¶146; Ex. 10 at 73.

The 2Q2024 10-Q also incorporated by reference the "Risk Factors" in Newmont's 2023 10-K, ¶129, which contained exhaustive cautionary language, including a three-page risk factor summary, a 33-page discussion of the risk factors, and a two-page explanation regarding forward-looking statements substantially similar to that in the 2Q2024 10-Q. Ex. 6 at 12-47. These statements also identified specific factors aligned with the issues Plaintiffs claim were concealed, such as "[c]osts at any particular mining location are subject to variation due to a number of factors, such as variable ore grade, changing metallurgy and revisions to mine plans in response to the physical shape and location of the ore body, as well as the age and utilization rates for the mining and processing related facilities and equipment" and an entire subsection devoted to "Risks Related to the Combined Company Following the Newcrest Transaction," including that "[w]e may not realize the anticipated benefits of the Newcrest transaction and the integration of Newcrest and Newmont may not occur as planned." *Id*. at 19, 46-47; *see also infra* 12.

The Denver Gold Forum webcast was also accompanied by cautionary language. Ex. 11 at 8 (warning "[a] decision to invest in…securities…should not be made in reliance on any of the information or materials presented or obtained during the Gold Forum"). And as to the October BNP charts, while Plaintiffs assert the charts were "virtually identical" and "substantially similar to" charts in Newmont's February 2024 investor presentation slides, ¶¶137, 141, it is not self-evident from the BNP report that the slides are from that presentation. Regardless, presentations like these, as shown by the charts in the company's February 2024 presentation, are accompanied by cautionary language and the Complaint does not plead otherwise. ¶¶138, 141 (see footnotes, directing to endnotes); Ex. 13 (February 2024 Presentation) at 2, 15, 16, 46-48. With respect to both, the 2023 10-K put investors on notice that "[a]ll subsequent written and oral forward-looking

statements attributable to Newmont or to persons acting on its behalf are expressly qualified in their entirety by these cautionary statements." Ex. 6 at 15.

These cautionary disclosures were sufficient to protect Newmont's forward-looking statements. *Gold Res*, 957 F. Supp. 2d at 1297 (noting "mere boilerplate cautionary statements such as [a] form warning have been upheld as sufficient"). Courts repeatedly reach the same conclusion as to similar disclosures by other mining companies. *Id.*; *Molycorp*, 2015 WL 1540523 at *27; *Barrick,* 341 F. Supp. 3d at 378.

*Third*, the Complaint does not adequately allege Defendants' "actual knowledge" of any forward-looking statement's falsity, a separate basis for safe-harbor protection. *Gold Res.*, 957 F. Supp. 2d at 1297. As discussed *infra* 18-23, Plaintiffs pleaded no specific facts showing that Defendants possessed *actual* knowledge of the *falsity* of their forward-looking statements. Thus, even putting aside Newmont's cautionary language, the safe harbor applies.

*Finally*, Plaintiffs' conclusory three-paragraph recitation that the safe harbor does not apply cannot salvage their defective claims. *See* ¶¶191-93; *Ellis* v. *Spectranetics Corp.*, 2018 WL 1583837, at *1 n.3 (D. Colo. Apr. 2, 2018) ("The court does not take as true the complaint's legal conclusions."). For the reasons above, the safe harbor applies and Defendants' forward-looking statements, which include virtually every statement at issue, should be dismissed.

## II.    Section 10(b) Claim: Plaintiffs Fail to Plead the Element of An Actionable Misstatement.

Even putting aside the safe harbor, there are many reasons the alleged misstatements are not actionably false or misleading.

### A.    The Complaint fails to adequately plead falsity.

The PSLRA's heightened pleading standard for falsity requires Plaintiffs to "specify each statement alleged to have been misleading, the reasons why the statement is misleading, and, if an

allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." *Gold Res.*, 776 F. 3d at 1109 (citing 15 U.S.C. § 78u–4(b)(1)(B)). "In reviewing the sufficiency of a plaintiff's pleadings, [courts] evaluat[e] the facts alleged in a complaint to determine whether, taken as a whole, they support a reasonable belief that the defendant's statements identified by the plaintiff were false or misleading." *Hampton* v. *root9B Tech's, Inc.*, 897 F.3d 1291, 1298-99 (10th Cir. 2018) (citing *Adams* v. *Kinder-Morgan, Inc.*, 340 F.3d 1083 (10th Cir. 2003) and enumerating factors courts consider).

Plaintiffs cannot simply serve up a hodgepodge of challenges at Lihir and Brucejack, ¶¶43-97, and demand the Court infer that the existence of those issues *must* mean that Defendants' varied statements touching on production and costs — whether past or future, specific or general — were false when made.

"Mere conclusory allegations of falsity are insufficient." *Grossman*, 120 F.3d at 1124; *see also Gold Res.*, 776 F.3d at 1108-09. But that is all the Complaint offers. Across the alleged misstatements, it repeats, with slight variations, the same boilerplate accusation: the statements were false and misleading because Defendants allegedly "failed to disclose they knew or recklessly disregarded that material adverse circumstances at Lihir and Brucejack *would* materially, adversely impact Newmont's production and increase its AISC." *See, e.g.*, ¶115; *see generally* ¶¶110-44.

Plaintiffs' surmise that alleged difficulties at Lihir and Brucejack "would materially, adversely impact" Newmont's results is not equivalent to pleading *facts* to this effect. ¶115. The Complaint does not connect any specific challenges with the specific statements at issue, leaving the Court to guess as to why any stray alleged fact about difficulties at Lihir and Brucejack —

enormous and complex operations — would render any alleged misstatement false when made. *Hampton*, 897 F.3d at 1299-1301 (plaintiffs failed to connect language in articles and filings with statements at issue).

These failures are compounded by the vagaries throughout the Complaint as to the alleged problems at Lihir and Brucejack, which themselves are not specified with the necessary particularity. *Caprin* v. *Simon Transp. Serv., Inc.*, 99 F. App'x 150, 158 (10th Cir. 2004) (Plaintiffs must plead "the who, what, when, where, and how" of the alleged fraud). Allegations of Lihir's purported failures — whether related to switchboard feeds, ocean dumping, termination of steam power, or power bus issues (¶¶58, 62, 69, 71) — lack meaningful details, including *what* specific material effect any of them had on Newmont's overall production or costs. So too with Brucejack. For instance, the Complaint alleges work assessing the orebody at Brucejack "uncovered early in 2024" "overstated…proven and probable reserves" without identifying the source of this claim, *who* made those observations and *to whom* they were communicated, or making any connection to how that meant the challenged statements were false when made. ¶92. Moreover, the company clearly communicated in February 2024 that it "publish[es] reserves annually, and will recalculate reserves at December 31, 2024." Ex. 6 at 67-68 (reserves); *id*. at 76 (resources).[8] Plaintiffs' conclusory and shotgun approach to pleading is fatal to their claims.

### B.    The challenged statements were not materially misleading due to information Defendants allegedly omitted.

The securities laws "do not create an affirmative duty to disclose any and all material information," *Matrixx Initiatives, Inc.* v. *Siracusano*, 563 U.S. 27, 44 (2011); *see also Basic Inc.*

---

[8] Palmer also stated in February that there was "*potential* at Brucejack *to get* a really solid understanding of that ore body" (¶74), communicating that the understanding of that asset could still develop. *See also infra* 13 (risk factor regarding reserves and resources), 15 and n.11 (discussing no duty or undertaking to update).

v. *Levinson*, 485 U.S. 224, 239 n.17 (1988). "Rule 10b–5 prohibit[s] only misleading and untrue statements, not statements that are incomplete." *Emps.' Ret. Sys. of R.I.* v. *Williams Co., Inc.*, 889 F.3d 1153, 1164 (10th Cir. 2018). The Complaint ignores these bedrock principles.

*First*, the Complaint's fundamental claim is that the disclosures were false and misleading because they failed to disclose issues at Lihir and Brucejack. But none of the alleged misstatements are materially misleading in context because Newmont disclosed a myriad of risks and challenges it faced, including at Lihir and Brucejack. Whether a statement is materially false or misleading "depends on [its] context," including "surrounding text," "apparently conflicting information," and "the customs and practices of the relevant industry." *Omnicare* v. *Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 190 (2015). In assessing the sufficiency of the pleading, courts evaluate, among other factors, "the coherence and plausibility of the facts when considered together" and "any other indicia of how strongly the facts support the conclusion that a reasonable person would believe that the defendant's statements were misleading." *Hampton*, 897 F.3d at 1299.

As detailed *supra* 2-9, Defendants clearly communicated the risks associated with the Newcrest acquisition and Newmont's mining operations, including at these two mines, and informed the market that developments were still ongoing in those areas. Detailed risk factors warned investors, for example, that "[e]stimates of…reserves and…resources are *uncertain* and the volume and grade of ore actually recovered may vary," "estimates" of reserves and resources are "subject to *considerable uncertainty*," and "[e]stimates relating to projects and mine plans…are *uncertain* and [Newmont] may incur higher costs and lower economic returns than estimated." Ex. 6 at 17-18; *see also*, *id.* at 12-14, 16, 19, 25, 29, 32, 46-47. The relevant context also includes that gold mining is a volatile industry and an inherently risky investment. *Gold Res.*, 776 F.3d at 1117

(discussing inherent uncertainties in mining); *see also Martin* v. *Quartermain*, 732 F. App'x 37, 42 (2d Cir. 2018).

Given these warnings, no reasonable person would have assumed that Lihir and Brucejack were not experiencing challenges or that production or cost estimates were certain, as evidenced by analyst commentary on Newmont's earnings calls. *See, e.g.*, ¶47 (discussing how "the Lihir asset has been a perennial underperformer ever since Newcrest [bought it]"). For example, on September 17, 2024, immediately following the Denver Gold Forum and after most of the alleged misstatements were made, UBS issued a report, ¶133, stating: "In our view Lihir is the source of medium-term growth that *carries the greatest degree of uncertainty/risk* considering the history of the mine." Ex. 14 (UBS Report) at 7. Similarly, in its October report, ¶135, BNP stated that "downside" risks for Newmont included "operational challenges," "high costs/capex," and "reduction in reserves/resources." Ex. 12 at 4. And, as Plaintiffs themselves point out, "Brucejack is well known in the industry as an unusually extreme heterolithic deposit with virtually unprecedented nugget effect." ¶88.

*Second*, the Complaint's claims regarding three statements of past results must also be dismissed because these factually accurate statements of past results are not rendered misleading because they omit some additional details about Lihir and Brucejack, including as to future production and cost guidance. Statements 1(a), 2, and 6.

The caselaw is clear: "[t]he disclosure of accurate historical data by [a mining company] regarding [mining conditions] cannot sustain a claim for violation of federal securities law." *In re Sibanye Gold Ltd. Sec. Litig.*, 2020 WL 6582326, at *15 (E.D.N.Y Nov. 10, 2020); *McDonald* v. *Kinder-Morgan, Inc.*, 287 F.3d 992, 998 (10th Cir. 2002) ("[A]ccurate recitations of historical successes [were] immaterial and not actionable as a matter of law.").

Here, the Complaint does not allege any facts showing that historical statement 6 was untrue, *e.g.*, that heavy rainfall did *not* impact mine sequencing at Lihir, or did *not* affect Lihir's 2Q2024 production. The same is true for statement 1(a) on the same topic. The Complaint also pleads no facts showing that historical statement 2 was false, *e.g.*, that the 2Q2024 AISC increase was *not* due to higher CAS and higher sustaining capital spend; the materials show it was. Ex. 10 at 3.

Plaintiffs' only assertion is that these statements were misleading because of omitted information. But no reasonable investor would assume Newmont's factually accurate explanation for past results implied that all challenges at Lihir or influences on costs had been enumerated, or implied anything specific about *future* production or cost guidance. *See Sibanye*, 2020 WL 6582326 at *15; s*ee also* Ex. 9 at 29 (Newmont warned it did "not undertake any obligation" to release revisions to forward-looking statements).[9] Moreover, Plaintiffs' claim with respect to statement 6 (and presumably 1(a)), that "Defendants failed to disclose that they knew, or recklessly disregarded…Lihir had already begun experiencing *material, adverse production issues* with both reliability and safety," ¶121, is demonstrably untrue because, in this very statement, Viljoen *was* directly addressing a "material, adverse production issue" at Lihir (rainfall impacting mine sequencing), and the remainder of her statement addresses *another* production issue there (the autoclave shutdown).[10] ¶120.

*Third*, the Complaint incorrectly alleges that risk factors in Newmont's 10-K, incorporated by reference into its 2Q2024 10-Q, related to "the risks of increasing operating costs" on the

---

[9] "[T]here is no duty to update in any event." *Shafer* v. *Lightning eMotors, Inc.*, 2024 WL 1509166, at *3 n.2 (D. Colo. Mar. 26, 2024).

[10] Defendants disclosed equipment issues at Lihir as early as February 2024 and provided investors with updates about the autoclave shutdown on each subsequent earnings call. Ex. 7 at 14; Ex. 2 at 7; Ex. 8 at 6, 15, 17.

company's profitability, were actionably misleading because alleged "production and cost issues at Lihir…and Brucejack" had impacted Newmont's results and would continue to in the future "such that the risk…had already materialized." *See, e.g.*, ¶¶129-130; statements 10(a)-(b).

"[C]autionary statements are 'not actionable to the extent plaintiffs contend defendants should have disclosed risk factors "are" affecting financial results rather than "may" affect financial results.'" *Bondali* v. *Yum! Brands, Inc.*, 620 F. App'x 483, 491 (6th Cir. 2015). A "reasonable investor would be unlikely to infer anything regarding the current state of a corporation's…operations from a statement intended to educate the investor on future harms." *Id.*; *see also Martin*, 2017 WL 3974002 at *9 n.13 (citing *Bondali* and finding "challenged risk disclosure is forward-looking").

Even if the Court assumes risk factors could be found materially misleading under certain circumstances where "the risk had materialized or was virtually certain to occur," the Complaint does not suffice here. *Ind. Pub. Ret. Sys.* v. *Pluralsight, Inc.*, 45 F.4th 1236, 1255 (10th Cir. 2022) (noting, and dismissing risk-factor allegations). It pleads no specific facts substantiating that, as of July 2024, issues at Lihir and Brucejack had translated to materially increased operating costs at those sites beyond expected levels, much less had done so to such an extent that they were certain to affect Newmont's overall projections. *See Barrick*, 341 F. Supp. 3d at 377 (disclosed mining risk did not materialize until ultimate impact was known); *Pluralsight*, 45 F.4th at 1256-57 ("nothing in the complaint supports the inference that Defendants knew [the company] was so far behind…that it was virtually certain to cause harm to the business"). Indeed, as noted, Plaintiffs do not challenge the accuracy of the reported financial results for that quarter. Mining companies are always experiencing some actualization of risk, given their uncertain operations, and reasonable investors understand this. *Gold Res.*, 776 F.3d at 1117; *In re Pretium Res. Inc. Sec.*

*Litig.*, 2020 WL 953609, at *3 (S.D.N.Y. Feb. 27, 2020) (noting a history of securities lawsuits "extracted from the Brucejack Mine," highlighting the uncertainty of its operations).

### C.    Many of the alleged misstatements are inactionable opinions and corporate optimism.

As the Tenth Circuit has made clear, "[p]ure statements of opinion…and statements of optimism that are not capable of objective verification are *not* material misstatements unless they inaccurately represent the speakers' beliefs concerning then-present factual conditions." *Hampton*, 897 F.3d at 1299.

Statements 1(b), 3-5, and 7-13 are opinions. They contain language such as "we are heading into the second half of the year *with confidence in our ability* to deliver on our business plan and the commitments [Palmer] reiterated" (statement 5), and "I can't *think* about it without stepping back and looking at the full portfolio" (statement 11), and the risk factors (statements 10(a)-(b)) are preceded in the 10-K by the Company's explanation they are "[r]isks that *we deem* material," Ex. 6 at 12. Indeed, the Complaint pleads that statement 8 is an "opinion statement." ¶125; *see also* ¶ 115 (pleading statement 3 is an "opinion"). Courts routinely reach the same conclusion. *See Heiner* v. *Watford*, 2022 WL 18777077, at *17 (D. Colo. Nov. 21, 2022), *report and recommendation adopted*, 2023 WL 2824288 (D. Colo. Mar. 27, 2023); *Martin*, 732 F. App'x at 40 n.1 ("[e]xpressions of optimism," "projections about the future," and "[e]stimates" are "well-established species of opinion"); *Pretium*, 2020 WL 953609 at *4 (case involving previous owner of Brucejack, "statements [that] give commentary or updates on, or tacitly express confidence in" company's "mine plan…are expressions of opinion").

To assert these opinions are false or misleading, Plaintiffs must allege that (1) Defendants did not sincerely believe the opinion and that opinion is incorrect; (2) Defendants' opinion contains "embedded statements of fact" that are false; or (3) Defendants' opinion excludes details and

creates a misimpression about the opinion's basis. *Omnicare*, 575 U.S. at 184-89. Plaintiffs fail to satisfy any prong. Plaintiffs do not allege that Defendants did not actually believe their stated opinions. Nor do they plead any specific facts showing Defendants lacked an adequate basis for them. *Richfield* v. *PolarityTE, Inc.*, 2023 WL 3010208, at *6 (D. Utah Apr. 19, 2023) (opinions not actionable on that basis). Conclusory pleadings that Defendants "knew or recklessly disregard" underlying issues at Lihir and Brucejack, ¶¶119, 125, are insufficient. *See supra* 10. And even if they had possessed some discordant facts, "an opinion is not misleading merely because an issuer knows facts cutting the other way." *Pretium*, 2020 WL 953609 at *5.

In addition to being opinions, statements like Viljoen's positive commentary on the 2Q2024 earnings call or at the Denver Gold Forum are inactionable corporate optimism. They are classic examples of "vague (if not meaningless) management-speak upon which no reasonable investor would base a trading decision" — such as "heading into the second half of the year with confidence," "stepping back," turning "assets inside out," and a "step change." ¶¶118, 131; *see Level 3*, 667 F.3d at 1340 ("general, forward-looking expressions of confidence" regarding integration not actionable even when company knew integration was not going well); *Heiner* 2022 WL 18777077 at *21.

## III.    Section 10(b) Claim: Plaintiffs Fail to Plead the Element of Scienter.

Plaintiffs' claims must also be dismissed because the Complaint fails to meet the PSLRA's "exacting" standard for pleading scienter. *Tellabs*, 551 U.S. at 308. This includes pleading with particularity facts giving rise to a "strong" inference of scienter that is "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 323-24 (referring to 15 U.S.C. § 78u-4(b)(2)(A)). The Tenth Circuit requires "a mental state embracing intent to deceive, manipulate, or defraud, or recklessness." *Level 3*, 667 F.3d at 1343. Recklessness "is a particularly high standard," *Ellis*, 2018 WL 1583837 at *13, that Defendants acted with *both*

"an extreme departure from the standards of ordinary care" *and* "present[ed] a danger of misleading [investors] that is either known to the defendant or is so obvious that the actor must have been aware of it." *Fleming*, 264 F.3d at 1258.

The scienter allegations are particularly thin here. Plaintiffs plead no facts as to Defendants' actual knowledge of the falsity of their statements. Instead, their theory is premised on allegations that Defendants were senior executives with the opportunity to know a variety of information; that challenges arose in the course of mining and integrating new assets; and that a few former employees ("FEs") say Defendants should have known Newmont would not be able to achieve its guidance as a result. This does not come close to alleging "extreme departure[s]" from ordinary care that "obvious[ly]" would mislead an investor. *Id.* The more compelling inference is that Defendants had not yet concluded that the projections needed to be revised if only because they were uncertain of the ultimate impact or, in hindsight, unduly optimistic about Newmont's prospects and ability to handle any challenges that arose, "for the plaintiffs supply little reason to suspect malevolence rather than benign optimism." *Anderson* v. *Spirit Aerosystems Holdings, Inc.*, 827 F.3d 1229, 1238 (10th Cir. 2016); *see also Level 3*, 667 F.3d at 1345 (failure to plead scienter where "the strongest inference we can draw is that defendants were negligent in failing to put together the pieces").

A.      **The Complaint's scienter allegations against Defendants are inadequate.**

Plaintiffs allege no facts showing that any of the Defendants actually *knew* that Newmont could not achieve its production and cost guidance or possessed information establishing this and recklessly disregarded it at the time. No particularized allegations connect any Individual Defendant to the receipt of any information about specific challenges at Lihir and Brucejack that undermined the company's overall production and cost guidance, let alone that this translated to actual knowledge that the purported misstatements were false when made. *Ellis*, 2018 WL

1583837 at *8, 12 (dismissing "inadequately particularized and merely conclusory" claims of scienter that "make very few particularized allegations about what the executives themselves knew during the relevant time frame"). The Complaint cites no contemporaneous documents, communications, or meetings connected to the Individual Defendants, instead "taking a shotgun approach in which Plaintiffs attempt to overwhelm the court with conclusory, speculative, and esoteric allegations." *Cupat* v. *Palantir Techs., Inc.*, 2025 WL 1141534, at *8 (D. Colo. Apr. 4, 2025). Nor can the updated forecast disclosed in October or Newmont's 2024 year-end reserve and resource statement (¶93-95) support scienter. *Caprin*, 99 F. App'x at 162) (dismissing allegations of fraud by hindsight); *Barrick*, 341 F. Supp. 3d at 371 ("Fraud depends on the state of events when a statement is made, not on what happens later.").[11]

These gaping holes cannot be papered over by the Complaint's generic assertion that Defendants Palmer, Ovelmen, and Viljoen, "by virtue of their positions at Newmont," "had actual knowledge" or "acted with reckless disregard for the truth." ¶207; *see also* ¶21. Plaintiffs "cannot infer scienter based only on a defendant's position in a company or involvement with a particular project." *Smallen* v. *Western Union, Co.*, 950 F.3d 1297, 1308 (10th Cir. 2020); *Wolfe* v. *Aspenbio Pharma, Inc.*, 587 F. App'x 493, 497 (10th Cir. 2014). Courts "on numerous occasions, have determined [such allegations] to be inadequate." *Gold Res.*, 957 F. Supp. 2d at 1298. And, because Plaintiffs fail to adequately allege scienter for the Individual Defendants or any other senior officials, they cannot "impute" or adequately allege scienter to Newmont, and have not otherwise

---

[11] Plaintiffs' allegations as to the year-end reserve forecasting process are also conclusory — they assert no specific facts substantiating that "in early 2024" or "no later than July 2024" results existed that rendered Defendants' statements false when made, fail to tie these naked allegations with particularity to any specific Defendant, and do not show how these unspecified results connect to Newmont's overall-company production and cost guidance. Moreover, the company disclosed a process for recalculating reserves and resources that culminates at year's end. *Supra* 11.

adequately alleged a sufficient factual basis to do so. *See Meitav Dash Provident Funds & Pension Ltd.* v. *Spirit AeroSystems Holdings, Inc.*, 79 F.4th 1209, 1230 (10th Cir. 2023); *Smallen*, 950 F.3d at 1312-13.[12]

**B.    The Former Employees' allegations do not support scienter.**

Plaintiffs seek to bolster their scienter allegations by alleging information from four purported former employees of Newmont. *See* ¶¶56-85. None of those allegations gives rise to the requisite "strong" inference of actual intent to deceive or recklessness.

Even were the Court to credit the FEs' assertions, they are no more than opinions about what Defendants should have or could have known given the challenges the FEs allege, including pre- and post-class-period events. For example, FE1 claimed "Newmont should have identified these issues" with Lihir "had they conducted comprehensive due diligence." ¶60 (also referring to "improbable" and "questionable" projections); *see also, e.g.*, ¶80 (claiming management should have spent more "time inspecting/touring the mines"). This is FEs' speculation as to what Defendants should have known, not facts showing they actually knew the falsity of their statements. *In re Overstock Sec. Litig.*, 2021 WL 4267920, at *15 (D. Utah Sep. 20, 2021), *aff'd*, 119 F.4th 787 (10th Cir. 2024). At best, these allegations might rise to a claim of negligence: not the "extreme departure" of care or "egregious refusal to see the obvious" that will mislead investors. *In re Agnico-Eagle Mines Ltd. Sec. Litig.*, 2013 WL 144041, at *12 (S.D.N.Y. Jan. 14, 2013), *aff'd*, 533 F.App'x 38 (2d Cir. 2013); *Gold Res.*, 776 F.3d at 1113 ("Negligence, even gross negligence, is not sufficient."); *Saee* v. *Enserveco et al.*, No. 1:22-cv-01267-DDD-STV (D. Colo.

---

[12] As to Plaintiffs' claim regarding "'group-published' information," ¶21, Plaintiffs must nonetheless plead *scienter* for each individual defendant, which they have not done, and cannot group plead that element. *In re Thornburg Mortg., Inc. Sec. Litig.*, 695 F. Supp. 2d 1165, 1200 (D.N.M. 2010).

Mar. 4, 2024), Dkt. No. 61 at 5 (dismissing where "facts do not create a strong inference of scienter, and the opposing inference that [the company's] mistakes were inadvertent or negligent is more likely.").

But reasons not to credit the FEs abound. Confidential witness allegations are subject to close examination. *In re FX Energy, Inc. Sec. Litig.*, 2009 WL 1812828, at *10 (D. Utah June 25, 2009); *Sorkin, LLC* v. *Fischer Imaging Corp.*, 2005 WL 1459735, at *7-10 (D. Colo. June 21, 2005). This is a particularly weak set of FEs. None are alleged to be senior management or to have held positions giving them responsibility for Newmont's annual or long-term production and cost outlook across the company's global operations. ¶¶56-79. Nor are the FEs alleged to have had direct communications with any of the Individual Defendants. All were based out of international mining sites far from Newmont's headquarters in Denver where the Individual Defendants were based, and Plaintiffs fail to allege their connection to the Individual Defendants, let alone that any specific information from the FEs traveled up to them. Thus, even if the FEs possessed firsthand information contradicting Defendants' public statements, there are no allegations such information was conveyed to the Defendants. The FEs cannot credibly speak to the Individual Defendants' scienter. *Anderson*, 827 F.3d at 1244.

Moreover, the FEs' jumble of inaccuracies, subjective opinions, and conclusory allegations are inherently unreliable. *Id.* at 1239. For example, as to FE1's statement about what due diligence would have revealed at Lihir (*supra* 20), Plaintiffs ask the Court to credit the speculation of a maintenance and repair coordinator — with no evident or alleged expertise in corporate M&A due diligence — about what Newmont should have identified during merger due diligence on a $17 billion company. As another example, FE3 claimed "Brucejack did not qualify as a Tier 1 mine." ¶80. But Newmont had *publicly disclosed* that Brucejack was not, properly understood, a Tier 1

asset on its own; rather, it was part of "an emerging Tier 1 district in the Golden Triangle" comprised of Brucejack and other assets, "which *does not currently meet* the criteria for Tier 1 Asset." Ex. 9 at 1 n.5. FE3 also alleged that "Defendant Palmer felt Brucejack had Tier 1 potential." ¶81. But this allegation supports a strong inference that Palmer did *not* possess the requisite scienter, because it shows he earnestly believed in Brucejack's positive production potential and cost profile.

Courts require far more than the halfhearted swipes the FEs take at Defendants. *See, e.g.*, *Level 3*, 667 F.3d at 1344 (dismissing in spite of 16 witnesses); *Anderson*, 827 F.3d at 1243 (dismissing in spite of witnesses who worked "closely" with executive defendants); *Rumbaugh* v. *USANA Health Scis., Inc.*, 2018 WL 5044240, at *8 (D. Utah Oct. 17, 2018) (dismissing in spite of witnesses with direct contacts with individual defendants).

### C.  Alleged stock sales do not support scienter.

Plaintiffs also claim that stock sales by Palmer and Defendant Toth, added to the Amended Complaint only for Section 20(a) liability but against whom there is no allegation of primary wrongdoing, support an inference of scienter. But "[c]ourts should not infer fraudulent intent based only on the fact that some officers sold stock." *Molycorp*, 2015 WL 1540523 at *22. Here, there was nothing suspicious or unusual about the sales. They occurred automatically at regularly scheduled intervals pursuant to 10b5-1 plans. ¶¶165-85. While 10b5-1 plans do not "*per se* rebut an inference of scienter," *Pluralsight*, 45 F.4th at 1266, they do "weigh against an inference." *Palantir*, 2025 WL 1141534 at *11 n.10. Moreover, both Palmer and Toth made substantial stock sales *after* the alleged fraud was supposedly revealed. ¶¶166-85. This is inconsistent with an inference of scienter: if they had intended to profit from the alleged fraud, it makes no sense that they would have first revealed it and then sold significant amounts of stock after the price dropped. *See Molycorp*, 2015 WL 1540523 at *23. Moreover, Defendants Ovelmen and Viljoen are not

alleged to have made any suspicious stock sales during the class period, further undercutting Plaintiffs' theory as to both them and generally. *See Smallen*, 950 F.3d at 1311.

### D.    The Complaint's allegations of scienter are not cogent or compelling.

Nor, viewed in its entirety, is Plaintiffs' theory of fraud either "cogent" or "compelling," particularly when compared to competing inferences. *Tellabs*, 551 U.S. at 324. Why would Defendants, whose "good faith" in issuing the February 2024 projections "is not at issue," ¶4, change course only months later and try to deceive the market for a single quarter? The Complaint offers no rationalization. *See Agnico-Eagle*, 2013 WL 144041 at *18 (inference of scienter "must be stronger than usual" where no "adequately allege[d] motive").

Far more "cogent" and "compelling" inferences exist. These include that Newmont was continuing to develop a robust understanding of its newly acquired assets while integrating them into the company and had not translated its learnings into concrete conclusions about revised production and costs, including on a company-wide basis. As the Tenth Circuit noted in another mining case, this more compelling theory "paints a different picture of the mining business, one in which it is not always possible to anticipate what miners will face as they dig deeper." *Gold Res.*, 776 F.3d at 1117.

Also more compelling is the inference that Defendants, like gold miners throughout history, were generally optimistic about Newmont's future prospects. Or that Defendants believed they had already accounted for the impact of issues at Lihir and Brucejack and that any issues that did arise could be adequately addressed or would not translate into a material impact on production and costs for the company as a whole, or could be offset by results from other mining sites during the same period.

IV.    **Section 20(a) Claim: Plaintiffs' Failure to Plead a Primary Violation Bars this
Claim.**

Because Plaintiffs fail to plead a primary violation of Section 10(b), they have failed to

adequately plead a predicate Section 10(b) violation, as is required, and thus their Section 20(a)

claims must also be dismissed. *See* U.S.C. § 78t(a); *Gold Res.*, 957 F. Supp. 2d at 1302.

## CONCLUSION

Plaintiffs' claims against each Defendant should be dismissed with prejudice.[13]

---

[13] There is no reason to believe more time could cure the defects in the Complaint, and Plaintiffs
should not receive another bite at the apple. *See In re Level 3 Comms., Inc., Sec. Litig.*, 2010 WL
5129524 at *12 (D. Colo. Dec. 10, 2010), *aff'd*, 667 F.3d 1331 (10th Cir. 2012).

Dated: September 12, 2025

**SHOEMAKER GHISELLI + SCHWARTZ, LLC**

/s/ Paul H. Schwartz
Paul H. Schwartz, #29729
1811 Pearl Street
Boulder, CO  80302
Tel: (303) 530-3452
Fax: (303) 530-4071
Email: pschwartz@sgslitigation.com

**WACHTELL, LIPTON, ROSEN & KATZ**

/s/ Jonathan M. Moses
Jonathan M. Moses
Carrie M. Reilly
Lorenzo A. H. Villegas
51 W. 52nd Street
New York, NY  10019
Tel: (212) 403-1000
Fax: (212) 403-2000
Email: JMMoses@wlrk.com
Email: CMReilly@wlrk.com
Email: LVillegas@wlrk.com

*Attorneys for Defendants Newmont Corporation, Thomas R. Palmer, Natascha Viljoen, Karyn F. Ovelmen, and Peter Toth*

**PRACTICE STANDARD III(A)(1) CERTIFICATE**

I hereby certify that the foregoing motion complies with the type-volume limitation set

forth in Judge Domenico's Practice Standard III(A)(1), as modified by the Court's September 5,

2025 Order Granting Defendants' Unopposed Motion to Exceed Word Limit (Dkt. 44).

/s/ Paul H. Schwartz
Paul H. Schwartz

## CERTIFICATE OF CONFERRAL

I hereby certify that pursuant to Judge Domenico's Practice Standard III(D), the parties

conferred prior to the filing of this motion but were unable to reach resolution.

/s/ Paul H. Schwartz
Paul H. Schwartz

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of September 2025, a true and correct copy of the

foregoing **DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT** was e-

filed with the Court through CM/ECF and served on all counsel of record.

/s/ Annika Markert
Annika Markert